UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DAVID COURY, an individual,

    Plaintiff,

    v.

CALIBER HOME LOANS, INC., a business entity, and DOES 1 through 100 inclusive,

    Defendants.

Case No. 16-cv-05583-RS

**ORDER GRANTING MOTION TO DISMISS SECOND AMENDED COMPLAINT**

## I. INTRODUCTION

Plaintiff David Coury filed suit against Defendant Caliber Home Loans ("Caliber") over its servicing of his mortgage loan. In his first amended complaint ("FAC"), he brought claims for violations of California's Homeowner Bill of Rights ("HBOR"), federal regulations enacting the Real Estate Settlement Procedures Act ("RESPA"), specifically 12 C.F.R. § 1024.41(c), and the Equal Credit Opportunity Act ("ECOA"), and also negligence. Caliber moved to dismiss the FAC and, on November 29, 2016, that motion was granted. The HBOR claims were dismissed without leave to amend, but Coury was granted limited leave to amend his negligence claim, and his claims for violations of 12 C.F.R. § 1024.41(c) and ECOA. In Coury's second amended complaint ("SAC"), he abandons his claims for violations of Section 1024.41(c) and ECOA, and brings new claims for violation of 12 C.F.R. § 1024.41(b), negligence per se based on violation of 12 C.F.R. § 1024.40(b), and violation of California's Unfair Competition Law ("UCL"). Caliber moves to dismiss the SAC on the grounds that it exceeds the grant of leave to amend in the prior order and still fails to state a claim. For the reasons explained below, Caliber's motion to dismiss is granted without leave to amend. Pursuant to Civil Local Rule 7-1(b), this matter is suitable for disposition without oral argument and the February 16, 2017 hearing will be vacated.

## II. BACKGROUND

The allegations of the FAC are described in great detail in the November 29, 2016 order dismissing the FAC ("prior order" or "Order"). In short, Coury purchased property with a loan in 2007. By 2015, he had fallen behind on his payments. On May 8, 2015, a notice of default was recorded against the property and his lender began foreclosure proceedings. Coury does not allege he contacted his lender about a loan modification at that time. On August 17, 2015, Caliber began servicing Coury's loan. On August 18, 2015, a notice of trustee's sale was recorded against the property, and the sale was scheduled for October 5, 2015. Throughout late August and September 2015, Coury alleges he attempted to submit paperwork to Caliber, but Caliber's disorganization and bureaucracy continually thwarted him. Consequently, he filed the instant suit in Marin County Superior Court on October 1, 2015 to stave off a foreclosure sale. Even after filing suit, Coury continued submitting paperwork in an effort to complete his application. After allegedly receiving no response from Caliber to his attempts to modify his loan, Coury sold the property to a third party for an undisclosed amount at some point after June 2016.

In the SAC, Coury retracts his previous allegation that his loan modification application was "complete" on September 30, 2015, and instead alleges vaguely that all materials for his loan modification application were submitted by that date. *Compare* SAC ¶ 29 *with* FAC ¶ 29. He also newly alleges Caliber lost the application material he submitted, SAC ¶ 1, and that he lost $100,000 in equity when he sold the property in 2016. SAC ¶ 48. The facts alleged in the SAC are otherwise identical to those in the FAC. The SAC includes three claims for relief: (1) violation of 12 C.F.R. § 1024.41(b); (2) negligence *per se* based on violation of 12 C.F.R. § 1024.40(b); and (3) violation of the UCL.

## III. LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While "detailed factual allegations" are not required, a complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic v.*

*Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. This standard asks for "more than a sheer possibility that a defendant acted unlawfully." *Id*. The determination is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Id.* at 679.

A motion to dismiss a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal under Rule 12(b)(6) may be based either on the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When evaluating such a motion, the court must accept all material allegations in the complaint as true, even if doubtful, and construe them in the light most favorable to the non-moving party. *Twombly*, 550 U.S. at 570. "[C]onclusory allegations of law and unwarranted inferences," however, "are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996); *see also Iqbal*, 556 U.S. at 678 ("threadbare recitals of the elements of the claim for relief, supported by mere conclusory statements," are not taken as true).

## IV. DISCUSSION

### A.   12 C.F.R. § 1024.41(b)

Coury now abandons his claim Caliber violated 12 C.F.R. § 1024.41(c) and instead alleges a violation of section 1024.41(b)(1). As an initial matter, this new claim exceeds the scope of leave to amend granted in the prior order. *See* Order at 11. Previously, Coury was granted leave to amend "Claim 6" of the FAC, which was a claim for violation of section 1024.41(c). *See* FAC ¶ 78.

Regardless, Coury fails to state a claim for violation of 12 C.F.R. § 1024.41(b)(1). That section defines the term "complete loss mitigation application." It states: "A complete loss mitigation application means an application in connection with which a servicer has received all

the information that the servicer requires from a borrower in evaluating applications for the loss mitigation options available to the borrower. A servicer shall exercise reasonable diligence in obtaining documents and information to complete a loss mitigation application." Coury argues Caliber failed to exercise reasonable diligence in obtaining documents and information to complete a loss mitigation application and thus violated § 1024.41(b)(1). Yet, subsection (b)(1) is the definition for the term "complete loss mitigation application," which is referenced in other sub-sections of § 1024.41 that impose requirements related to a servicer's review and evaluation of such application. Coury's suggestion that the final sentence of subsection (b)(1) can be read as a regulation wholly separate from those that follow is untenable in light of the regulation's structure.

By its plain language, subsection (b)(1) defines a "complete loss mitigation application" for the requirements that follow, not as a distinct requirement in and of itself. The legislative history supports this conclusion. Proposed regulations from 2012 note "reasonable diligence" could include "notifying the borrower within five days of receiving an incomplete application," 2012 RESPA (Regulation X) Mortgage Servicing Proposal, 77 FR 57200-01, 2012 WL 4049789, which is a requirement set out in § 1024.41(b)(2)(i). Moreover, Coury himself seems to tie the "reasonable diligence" definition to the other requirements of § 1024.41(b). To show Caliber did not exercise reasonable diligence, Coury alleges he "was never sent written acknowledgement [sic] that his application materials were received. . ." SAC ¶ 46. Further, Coury claims Caliber failed to inform him "of applicable loss mitigation application deadlines in order to complete the loss mitigation review process." *Id.* These allegations echo the requirements of § 1024.41(b)(2).

Coury has failed to allege that he submitted his application with the timeline prescribed by § 1024.41(b). Subsection (b)'s requirements are triggered only when "a servicer receives a loss mitigation application 45 days or more before a foreclosure sale." 12 C.F.R. § 1024.41(b)(2)(i). Caliber had received nothing from Coury 45 days before the scheduled foreclosure sale. Caliber had only begun servicing Coury's mortgage 49 days before the scheduled foreclosure sale. Coury's attempt to read the time requirements out of 12 C.F.R. § 1024.41(b), while retaining its

1  standard for reasonable diligence, is unpersuasive.  Twice now, Coury has tried and failed to state
2  a claim under RESPA.  It seems he cannot do so.  Consequently, his claim is dismissed without
3  leave to amend.

### B.     Negligence

Coury again brings a negligence claim, yet this time he brings his claim under the theory of negligence per se.  Traditionally, "to state a cause of action for negligence, a plaintiff must allege (1) the defendant owed the plaintiff a duty of care, (2) the defendant breached that duty, and (3) the breach proximately caused the plaintiff's damages or injuries." *Lueras v. BAC Home Loans Servicing, LP*, 221 Cal. App. 4th 49, 62 (2013).  "Under the doctrine of negligence per se, the plaintiff 'borrows' statutes to prove duty of care and standard of care." *David v. Hernandez*, 226 Cal. App. 4th 578, 584 (2014) (internal citation omitted).  "The doctrine of negligence per se is based on 'the rule that a presumption of negligence arises from the violation of a statute which was enacted to protect a class of persons of which the plaintiff is a member against the type of harm that the plaintiff suffered as a result of the violation.'" *Id.*  Thus, to establish negligence per se, a plaintiff must show that (1) defendant violated a statute, ordinance or regulation of a public entity, (2) the violation proximately caused his injury, (3) the injury resulted from an occurrence of the nature which the statute was designed to prevent; (4) he was one of the class of persons for whose protection the statute was adopted. *Sierra-Bay Fed. Land Bank Assn. v. Superior Court*, 227 Cal. App. 3d 318, 336 (1991).

Coury bases his negligence per se claim on a violation of 12 C.F.R. 1024.40(b).  That section of RESPA provides that a servicer must maintain certain policies and procedures for continuity of contact in assisting delinquent borrowers with loss mitigation options and procedures.  Coury, however, does not allege a violation of that section.  Moreover, as explained above and in the prior order, RESPA's loss mitigation procedures are triggered by certain time limitations and Coury's allegations do not fit within those timeframes.  In other words, RESPA's loss mitigation procedures protect borrowers who submit their applications within specific timeframes and Coury is not among the class of individuals RESPA intended to benefit.  Thus,

Coury has failed to allege facts showing that Caliber owed him a duty of care under the doctrine of negligence per se.

Even if Coury could establish a duty of care based on a violation of 12 C.F.R. 1024.40(b), he still fails to allege facts showing Caliber's breach proximately caused his harm. As previously explained, Coury does not allege that Caliber placed him in a position to require a loan modification. Any harm that Coury allegedly experienced as a result of Caliber's silence or disorganization is primarily attributable to his default, not Caliber's actions. *See* Dkt. No. 24. In the SAC, Coury now claims he lost $100,000 in equity when he sold the property "in haste, so as to not lose it to foreclosure." SAC ¶ 62. Caliber, however, had no duty to safeguard Coury's investment in the property, nor to modify his loan. *See* 12 C.F.R. § 1024.41(a) ("Nothing in § 1024.41 imposes a duty on a servicer to provide any borrower with any specific loss mitigation option.") Coury claims he "felt he had no other option but to sell his property," but he did, in fact, have other options. *Id.* At bottom, Coury no longer has an interest in the property because he defaulted on the loan, waited more than three months after the notice of default was recorded to seek a loan modification, and then sold the property. Because Coury has twice now failed to allege facts showing Caliber owed him a duty or Caliber's alleged breach caused the damages he claims, his claim for negligence is dismissed without leave to amend.

### C.  California's Unfair Competition Law

In the SAC, Coury now brings a claim under California's UCL, which prohibits unlawful, unfair, or fraudulent business acts or practices. Cal. Bus. & Prof. Code § 17200 *et seq*. This claim also exceeds the scope of leave to amend granted in the prior order; no UCL violation was previously pleaded. Regardless, Coury's UCL claim fails. He proceeds under the UCL's unlawful prong, thus the success of this claim depends on the success of his other claims. Coury alleges vaguely that his UCL claim is based on RESPA, but only cites specifically 12 C.F.R. § 1024.41(b). Because Coury fails to state a claim for negligence or violation of § 1024.41(b), his derivative UCL claim fails too.

### V. CONCLUSION

For the foregoing reasons, Caliber's motion to dismiss is granted. Because it appears Coury cannot allege facts showing Caliber violated RESPA, owed him a duty of care, or caused his damages, his claims are dismissed without leave to amend.

**IT IS SO ORDERED**.

Dated: February 6, 2017

_____
RICHARD SEEBORG
United States District Judge